# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
    Plaintiff

vs.

JOSE I. TORRES-NAZARIO,
    Defendant

CRIMINAL NO.: 17-084 (DRD)

## SENTENCING MEMORANDUM

### I. Introduction

Jose's story is similar to many young defendants who unfortunately enter the criminal justice system. Jose grew up in a low-income household in Coamo, Puerto Rico. His parents were happily married and were attentive parents to Jose and his siblings. When Jose was 6 years old his life was turned upside down when his mother was diagnosed with cancer. Due to the severity of the illness and the treatment she could not care for him for the first years she was battling cancer. Jose had to move away and live with his aunts. He missed her terribly and for the last two years of her life he went back to living with her and would stay with her at all times. Jose would miss school to go to her doctor's appointments just so he could be with her. Jose is still deeply moved when speaking of her and of those early years of his life.

For most of his youth Jose was shuttled between his aunts, uncles and his maternal grandmother. At some point his father remarried and he went back to living with him and his new stepmother. Jose didn't get used to living with his father and another woman who was not his mother so after a couple of years he again moved in with his aunt. Nevertheless, Jose has a great relationship with his father and today, during his time of

need, Jose's father showed his support by agreeing to let Jose live with him while he is out on bond during this process.

Jose has been an athlete all his life. He has represented PR in several competitions as a marathon runner in and out of the US and has earned gold and silver medals for his effort. Jose has never been in any kind of trouble with the law until his arrest for this case. He is a family man. Jose has 5 children from 3 prior relationships and is the proud stepfather to his girlfriend's 3 children. He has his GED and is interested in pursuing vocational training in physical therapy, barbershop and electrician. Upon release he plans to work, study to achieve his goals and make up for lost time with his children.

Jose has never been in prison. He regrets his actions and accepts responsibility for his actions and blames no one but himself. Jose realizes there is no justification for his action. He knows that the Court has probably heard every excuse before and that he had other options he could have pursued. However, Jose wants the Court to know that his dire economic situation and his wish to provide for his 5 children and family is what led him to make rash decisions. However, Jose wants the Court to know that he accepts full responsibility and is ashamed and repentant for what he did. Now, Jose comes before the Court asking for leniency and for the Court to give him the tools necessary to rehabilitate himself.

The Court should note the effect of parental incarceration on children. It has been argued that, besides the parental absence, the harm to children is likely to include several other critical domains of adjustment—school success, occupational attainment, and family formation, to name a few—because childhood mental health and behavioral problems tend to accumulate and spread over time. Thus, a lengthy sentence for Jose will

not only affect him, but will affect his five (5) biological children and three (3) stepchildren in a myriad of negative ways.

## II. A just sentence for Jose

Jose has committed a non-violent offense for which a mandatory minimum of five years is triggered. The offense of conviction is a serious crime and Jose knows that he should be punished accordingly. With that in mind, Jose asks the Court to make an "individualized assessment" of his case "based on the facts presented"[1] and based on the § 3553(a) factors as they apply to him. The plea agreement recommends a sentence of sixty (60) months – the mandatory minimum in addition to a within the guidelines sentence for the drug count (0-6 months) which is more than enough for an individual like Jose. The Court should note that mandatory minimums are *per se* harsh, lengthy sentences and lead to higher incarceration rates which is not the best sentencing practice. "[S]entencing by mandatory minimums is the "antithesis of rational sentencing policy."[2]

Besides being unduly harsh, lengthy prison sentences have little effect on reducing the crime rate. Former Attorney General Eric Holder noted that the still-growing rates of incarceration are having little effect on crime rates.

> While prison building and prison spending continue to increase, public safety is not improving. Since 2003, spending on incarceration has continued to rise, but crime rates have flattened. Indeed, crime rates appear to have reached a plateau, and no longer respond to increases in incarceration.

---

[1] *U.S. v. Gall, 552 U.S. 38, 50* (2007).
[2] James E. Felman, ABA Lawyer testifying before the US Sentencing Commission in 2012, http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2012/march/sentencingcommission.html

*See* Remarks as prepared for delivery by A.G. Eric Holder at the Vera Institute of Justices' Third Annual Justice Address.[3]

Recent studies have also shown that lengthy sentences are insignificant in reducing the crime rate and that there is no connection between sentence length and deterrence. The Brennan Center for Justice, for example, released a report in February of 2015, in which it concluded that "increased incarceration has had no effect on the drop in violent crime in the past 24 years."[4] In fact, "increased incarceration accounted for approximately 6 percent of the reduction in property crime in the 1990s (this could vary statistically from 0 to 12 percent), and accounted for *less than 1 percent* of the decline in property crime this century."[5]

The states and Congress are taken notice of this outdated sentencing regime and are making strides to change it. In 2014, thirty (30) states and the District of Columbia authorized a range of changes to the law and policies that address the nation's scale of incarceration and would expand sentencing alternatives such as probation.[6] In 2010, Congress approved the Fair Sentencing Act, which reduced sentences for crack related cases and in 2013, the Smarter Sentencing Act was introduced in Congress with bi-partisan support. This law, if passed, would scale back federal mandatory minimum sentences. Furthermore, in April of 2014 the US Sentencing Commission approved a reduction in the base offense level in certain drug offenses that will impact roughly 70%

---

[3] Available at http://www.vera.org/pubs/remarks-prepared-attorney-general-eric-h-holder-jr-vera-institute-justices-third-annual-justice (last visited March 3, 2014).
[4] Dr. Oliver Roeder, Lauren Brooke-Eisen and Julia Bowling. Brennan Center for Justice. *What Caused the Crime Decline?* (2015) at Page 15. *available at* https://www.brennancenter.org/publication/what-caused-crime-decline
[5] Id.
[6] Nicole Porter. The Sentencing Project. *The State of Sentencing 2014: Developments in Policy and Practice.* (February 2015). Available at http://sentencingproject.org/doc/publications/sen_State_of_Sentencing_2014.pdf

of drug offenses. Judge Patti B. Saris, chair of the Commission stated, "This modest reduction in drug penalties is an important step toward reducing the problem of prison overcrowding at the federal level in a proportionate and fair manner."[7]

## III. Conclusion

Mandatory minimum sentences are being viewed as lengthy and harsh. Within this context, the sentence requested by Jose is more than reasonable and more than sufficient. A day over sixty months (60) would make a harsh and lengthy sentence even harsher and lengthier. Ultimately, it would not serve the purposes of § 3553(a). A sixty month sentence would adequately serve to punish him and, when followed by a term of supervised release, more than sufficiently serves the deterrent and rehabilitative goals of sentencing. The Court can find comfort in the fact that any sentence imposed on Jose along with the many collateral consequences of a felony conviction will constitute severe punishment for him.

**RESPECTUFULLY SUBMITTED**.

In San Juan, Puerto Rico, this December 7, 2017.

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the parties of record.

**ERIC A. VOS**
**Federal Public Defender**
**District of Puerto Rico**

***S/SULAY RIOS-FUENTES***
Sulay Rios-Fuentes
USDC- No. 222901
A.F.P.D. for Defendant
241 Franklin D. Roosevelt Avenue

---

[7] Evan Perez. *US moves towards shorter sentences for drug crimes* (April 10, 2014). Available at http://www.cnn.com/2014/04/10/us/sentencing-commission/index.html

Hato Rey, PR 00918-2441  
Tel. (787) 281-4922 / Fax (787) 281-4899  
E-mail: Sulay_Rios@fd.org